


___X___ Priority
___X___ Send
_____ Clsd
___X___ Enter
_____ JS-5/JS-6
_____ JS-2/JS-3

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MILTON H. GREENE ARCHIVES, INC., | Case No. SA CV 04-635-GLT (MLGx) |
| Plaintiff, | |
| vs. | ORDER ON MOTIONS FOR SUMMARY JUDGMENT |
| BPI COMMUNICATIONS, INC. et al., | |
| Defendants. | THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d). |

Defendant's motion for summary judgment on waiver is DENIED. Plaintiff's motion for summary judgment on infringement is DENIED. Defendant's motion for summary judgment on infringement is GRANTED. Plaintiff's motion for summary judgment on Defendant's affirmative defenses is MOOT.

I. BACKGROUND

Plaintiff claims to own copyrights in various photographs of Marilyn Monroe. Defendant published a book, Blonde Heat, displaying photographs of Marilyn Monroe. Plaintiff alleges it owns copyrights in seven photographs in Blonde Heat and Defendant infringed its copyrights by publishing the photographs without permission.

Now, Defendant moves for summary judgment on waiver and infringement, and Plaintiff moves for summary judgment on infringement and Defendant's affirmative defenses.

## II. DISCUSSION

Summary judgment is proper if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

### A. Motion for Summary Judgment on Waiver

In 2003, Plaintiff settled an earlier copyright infringement suit against Photofest, Inc. In the settlement agreement, Defendant argues, Plaintiff executed broad releases intended to protect Photofest, Inc.'s customers from claims arising from Photofest, Inc.'s previous renting of photographs Plaintiff claimed to own, including the seven photographs at issue here.

Defendant contends it is a member of the class of customers Photofest, Inc. intended to protect in the settlement agreement, as it obtained the seven photographs from Photofest, Inc. and published Blonde Heat before the settlement agreement was executed.

Paragraph 6, the release language in the agreement, states:

> The Parties, individually and on behalf of and for each of their respective parent corporations, partners, venturers, subsidiaries, estates, or corporations connected therewith, together with their respective agents, representatives, employees, officers, directors, shareholders, attorneys, successors, assigns and heirs (collectively, "Affiliates") agree to release any and all claims . . . which the Parties and their Affiliates had, now have, claim to have had, or otherwise could have against each other which relate in any way to, or otherwise

arise out of the images at issue in the PHOTOFEST Action. (Mandelbaum Decl. Ex. A ¶ 6 (emphasis added).)

This language is very broad. As a matter of law, "assigns" would <u>ordinarily</u> include Photofest, Inc.'s "customers." But the parties have apparently provided otherwise in their agreement. In ¶ 16, they provide they "have not <u>assigned</u> any claims or rights made the subject of this Agreement." (Mandelbaum Decl. ¶ 16 (emphasis added).) In effect, Photofest, Inc. agrees it does not have any "assigns."

Based on the extrinsic evidence, the Court finds a triable issue. Howard Mandelbaum, Photofest, Inc.'s president, testified:

> It was my intention and has always been my understanding . . . that the term "assigns" in the Settlement Agreement refers to Photofest's customers. I intended, and I always have understood, that the release included any claims that potentially could arise from the use by any of Photofest's customers of photographs rented from Photofest prior to the signing of the Settlement Agreement.

(Mandelbaum Decl. ¶ 7.)[1]

In contrast, Joshua Greene, Plaintiff's president, testified:
> During settlement discussions in Photofest defendants asked that the settlement reach and include Photofest customers, and I refused that request on behalf of the settling plaintiffs in the Photofest action. It was never my intent, nor that of the Plaintiffs in the Photofest action, to release any of Photofest's customers.

---

[1] For this motion only, the Court assumes Howard Mandelbaum's declaration is admissible.

(Greene Decl. ¶ 27.)[2/]

The evidence raises a triable issue on the parties' intent. Defendant's motion for summary judgment on waiver is DENIED.

### B. Cross-Motions for Summary Judgment on Copyright Infringement

To prevail on its copyright infringement claim, Plaintiff must show ownership of a valid copyright and copying of the protected aspects of the work by Defendant. Ellison v. Robertson, 357 F.3d 1072, 1076 (9th Cir. 2004).

#### 1. Ownership

A certificate of registration is prima facie evidence of ownership of a copyright. Apple Computer, Inc. v. Formula Int'l Inc., 725 F.2d 521, 523 (9th Cir. 1984). Based on certificates of registration, Plaintiff contends it owns copyrights for the seven photographs. (Greene Decl. ¶¶ 6-11.)

Defendant argues Plaintiff's certificates of registration list Joshua Greene as the copyright claimant, (Greene Decl. Exs. 1-6), but Joshua Greene is not the plaintiff in this case. Defendant also argues

---

[2/] Numerous aspects of Joshua Greene's declaration are hearsay, (Thomas Decl. Ex. N at 150-51 (citing testimony by Joshua Greene, who stated his understanding of the agreement is based entirely on communications from his attorney)), but the nonhearsay aspects of his declaration are sufficient to raise a triable issue. First, Joshua Greene testified he refused to include customers in the settlement agreement. From this testimony, one can reasonably infer he communicated his refusal to his attorney, who conveyed his refusal to opposing counsel in the Photofest, Inc. action. Second, Joshua Greene testified he never intended to release customers.
At the May 9, 2005 hearing, Plaintiff's attorney pointed out other items of evidence support the position taken in Joshua Greene's declaration. The Court is satisfied a triable issue is shown by the evidence now in the record.
If any party believes additional discovery is necessary as a result of this ruling, an appropriate motion may be made.

that, although Joshua Greene declares he transferred his rights in the photographs to the Archives of Milton H. Greene LLC, (Greene Decl. ¶¶ 15-18), the Archives of Milton H. Greene LLC is not the plaintiff in this case. Defendant concludes Plaintiff has not offered any evidence showing Plaintiff -- Milton H. Greene Archives, Inc. -- owns the copyrights. See Silvers v. Sony Pictures Entm't, Inc., 402 F.3d 881, 884-85 (9th Cir. 2005) (en banc) (stating only the owner of a copyright may sue for infringement).

Here, there is evidence Plaintiff was assigned the seven copyrights. (Soni Reply Decl. ¶ 2 & Ex. L (referencing the Assignment of Copyright, assigning all rights to the copyrights to Plaintiff); Pl.'s Reply at 10 (quoting deposition testimony, in which Joshua Greene testified he transferred his rights in the photographs to Plaintiff).)

The certificates of registration constitute prima facie evidence of ownership of a copyright.

       2.   <u>Validity</u>

A certificate of registration is prima facie evidence of validity of a copyright. Apple Computer, Inc., 725 F.2d at 523. Plaintiff shows evidence it has a certificate of registration for each of the seven photographs and, therefore, it contends its copyrights in the photographs are presumptively valid. (Greene Decl. ¶¶ 6-11.)

Defendant argues a certificate of registration constitutes prima facie evidence of validity <u>if</u> the registration is "made before or within five years after <u>first publication of the work</u>." 17 U.S.C. § 410(c) (emphasis added). Defendant contends Plaintiff's photographs were first published in 1956 and 1957, (Def.'s Mot. Summ. J. at 14-16

(citing evidence)),[3/] yet Plaintiff's certificates of registration were

---

[3/] Plaintiff argues Defendant's evidence of publication is inadmissible. First, Plaintiff contends Defendant "does not know . . . Exhibits A-1, B-1 through B-8, C-1, D-1, E-2, F-3, G-2 through G-7 are 'true and correct copies' of certain newspaper and magazine advertisements from the 1950s . . . since he did not personally obtain [them] from the purported sources." (Pl.'s Opp'n at 6.)

This objection is overruled. Newspaper and magazine advertisements and photographs are self-authenticating. Fed. R. Evid. 902(6); Stanley v. Darlington County Sch. Dist., 879 F. Supp. 1341, 1370 (D.S.C. 1995) ("Because newspapers are self-authenticating under Fed. R. Evid. 902(6), the court finds that the newspaper articles offered by the District are admissible."), rev'd in part on other grounds by 84 F.3d 707 (4th Cir. 1996). The campaign books are also self-authenticating as items bearing trade inscriptions, Fed. R. Evid. 902(7), and the publicity stills were authenticated by Plaintiff. (Def.'s Reply at 15 (citing evidence)).

Second, the advertisements and photographs are probably not correctly analyzed as being offered to prove the truth of the matter contained. However, even if they are, they fit within the "ancient documents" exception. Fed. R. Evid. 803(16) (noting "statements in a document in existence twenty years or more the authenticity of which is established" are an exception to the hearsay rule).

Third, Plaintiff argues Defendant's exhibits should be excluded because they are not originals. This objection is overruled. Under Federal Rule of Evidence 1003, a duplicate is admissible unless "a genuine issue is raised as to the authenticity of the original." Here, Plaintiff does not raise a genuine issue as to the originals' authenticity. Defendant also represents it has several of the original sources and allowed Plaintiff to review them.

Fourth, Plaintiff contends the exhibits are of very poor quality and are inadequate to serve as a basis for comparison with the genuine photographs. Plaintiff's contention is not well taken. The evidence shows that, for every copy available at the time of Plaintiff's deposition, Plaintiff conceded Defendant's copies are identical to Plaintiff's photographs. (Def.'s Reply at 7 (citing evidence).) Plaintiff's concession leaves only two photographs for the Court to compare. (Def.'s Reply at 8; Thomas Decl. Exs. A-1, WW.) As to the two photographs, Plaintiff has not pointed to any differences between the originals and the copies, and the Court was unable to find any.

The evidence is admissible.

filed in 1994 and 2003. (Greene Decl. Exs. 1-6). Defendant argues this shows the certificates of registration were not "made before or within five years after first publication of the work." 17 U.S.C. § 410(c). Defendant concludes Plaintiff's certificates of registration do not constitute prima facie evidence of validity. Entm't Research Group, Inc. v. Genesis Creative Group, Inc., 122 F.3d 1211, 1218 (9th Cir. 1997).

Plaintiff, however, contends the 1956 and 1957 distributions are "limited publications," and "a 'limited publication' is really in the eyes of the law no publication at all." Data Cash Sys., Inc. v. JS&A Group, Inc., 628 F.2d 1038, 1043 (7th Cir. 1980). Plaintiff concludes the 1956 and 1957 distributions do not constitute "first publication of the work" and the copyrights are presumptively valid.

The Court assumes, but does not decide, Defendant has the burden to show the distributions constitute a "general publication" and not a "limited publication."

      a. General Publication

Under the 1909 Copyright Act,[4] an unpublished work is protected by a state common law copyright. But, when a work is published, it loses state common law protection. La Cienega Music Co. v. ZZ Top, 53 F.3d 950, 952-53 (9th Cir. 1995). Upon general publication of a work, the copyright owner could obtain federal protection for the published work by complying with the requirements of the 1909 Act. Id. "If the owner

---

[4] The validity of a copyright in a work distributed before 1978 is determined by the 1909 Act. Self-Realization Fellowship Church v. Ananda Church of Self-Realization, 206 F.3d 1322, 1325 (9th Cir. 2000) ("Because all of the copied works were created before 1978, the Copyright Act of 1909 governs the validity of the initial copyrights."). Here, the photographs were first distributed in 1956 and 1957.

failed to satisfy the [1909] Act's requirements, the published work was injected irrevocably into the public domain." Id. at 953.

Defendant contends Plaintiff cannot satisfy the 1909 Act's requirements. Defendant argues the photographs were published without a copyright notice in Milton Greene's name and with his permission.

### 1.) Permission

The evidence demonstrates Milton Greene permitted publication of the photographs. Joshua Greene testified Milton Greene permitted the publicists to use the photographs to promote the motion pictures and to place the photographs in newspapers, magazines, and campaign books. (Thomas Decl. Ex. H at 100-02.) For example, a newspaper published one of the photographs in connection with an advertisement publicizing a motion picture. When asked whether the photograph's publication in the newspaper was contrary to Milton Greene's permission, Joshua Greene answered, "No." (Thomas Decl. Ex. H at 102-03.) Joshua Greene also testified use of the photographs in "an editorial press-release kind of style" in newspapers and magazines "is the appropriate intended use." (Thomas Decl. Ex. H at 88; see also Def.'s Reply at 5-6 (citing evidence).)

The evidence shows Milton Greene permitted publication of the photographs.

### 2.) Copyright Notice

Upon publication, copyright protection under the 1909 Act could be secured by affixing a copyright notice, which included the name of the copyright proprietor, to each copy of the work "published or offered for sale in the United States by the authority of the copyright proprietor." 17 U.S.C. § 10. This requires copyright notice in the name of the copyright holder, not merely in the name of the publishing

newspaper, magazine, or campaign book. <u>N.Y. Times Co. v. Tasini</u>, 533 U.S. 483, 494 (2001).[5/]

When a work is published in a larger copyrighted collective work, the failure to place a copyright notice on the individual work forfeits the individual's copyright. <u>Id.</u> ("Pre-1976 copyright law recognized a freelance author's copyright in a published article only when the article was printed with a copyright notice in the author's name. . . . [W]hen a copyright notice appeared only in the publisher's name, the author's work would fall into the public domain, unless the author's copyright, in its entirety, had passed to the publisher.").

Plaintiff offers the declaration of Joshua Greene, who testified: "I am aware that my father, Milton H. Greene, always applied copyright notice on the back of prints he provided to the movie studios." (Greene Decl. ¶ 21.)

The Court does not admit this testimony because it is a conclusion, and without foundation. Additionally, it violates the best evidence rule. As Defendant correctly states, "the best evidence of a copyright notice on a document is the document containing the copyright notice." (Def.'s Objections Greene Decl. at 12.) Plaintiff has not provided any admissible documentary evidence of any copyright notice in Milton Greene's name affixed to any of the seven photographs. <u>See</u> <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Taylor [alleged]

---

[5/] While none of the photographs includes a copyright notice in Milton Greene's name, copyright language on the back of one of the photographs appears to reference "International News Photos" and "King Features Syndicate, Inc." (Pl.'s Opp'n at 15 n.13; Thomas Decl. Ex. E-1.) Copyright language on another photograph states, "Copyright 1957 Warner Bros. Pictures Distributing Corporation." (Pl.'s Opp'n at 15 n.13; Thomas Decl. Ex. F-2.) Under the applicable law, they do not constitute sufficient copyright notice.

Belleville personally stopped law clerks and law books from being presented to Taylor. None of the affidavits Taylor attached as exhibits contained any facts to support the allegation . . . . A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by fact."). Plaintiff has not demonstrated an exception to the best evidence rule is met.

The admissible evidence shows the photographs are not affixed with a copyright notice in Milton Greene's name.[6/]

### 3.) Publication

The parties agree a publication occurs "when, by consent of the copyright owner, the original or tangible copies of a work are sold, leased, loaned, given away, or otherwise <u>made available</u> to the general public." (Pl.'s Opp'n at 13; Def.'s Reply at 2 (emphasis added).)

Courts have found publication of a photograph in a newspaper or magazine constitutes a general publication. See, e.g., <u>Donald Frederick Evans & Assocs., Inc. v. Cont'l Homes, Inc.</u>, 785 F.2d 897, 901 (11th

---

[6/] Plaintiff contends the exhibits are incomplete and are unable to prove no copyright notice accompanied the photographs. Fed. R. Evid. 106. This objection is overruled. Rule 106 states, "When a writing . . . or part thereof is introduced by a party, an adverse party may require the introduction . . . of any other part . . . which ought in fairness to be considered contemporaneously with it." Rule 106 does not authorize the Court to exclude evidence; instead, it permits the adverse party to include evidence. Here, Plaintiff does not seek to include other evidence.
Plaintiff also contends there is no need to affix a copyright notice where there is only a limited publication. <u>GCA Corp. v. Chance</u>, No. C-82-1063, 1982 WL 1281, at *2 (N.D. Cal. Aug. 31, 1982). Because the distributions here constitute only a limited publication, Plaintiff argues, movie studios did not affix a copyright notice in Milton Greene's name on the publicity materials. (Pl.'s Opp'n at 15 & n.13.) The Court addresses limited publication in Part II.B.2.b.

Cir. 1986).[7/]  In <u>Roy Export Co. v. Columbia Broadcasting System, Inc.</u>, for example, the Second Circuit stated publication of a novel in a magazine, involving "nationwide distribution," was a general publication and "unquestionably terminated the author's common-law rights."  672 F.2d 1095, 1104 (2d Cir. 1982).

Publication of a derivative work publishes whatever portion of the original work is incorporated into the derivative work.  <u>See, e.g.</u>, <u>Shoptalk, Ltd. v. Concorde-New Horizons Corp.</u>, 168 F.3d 586, 591 (2d Cir. 1999) ("[W]hen the author consents to the inclusion of his work in a derivative work, the publication of the derivative work, to the extent . . . it discloses the original work, also constitutes publication of [the] underlying work.").[8/]

Here, the photographs were published on three occasions.  First,

---

[7/] Plaintiff argues <u>Donald Frederick Evans</u> is inapplicable.  Plaintiff contends that, unlike <u>Donald Frederick Evans</u>, which was decided under the 1976 Act, this action is governed by the 1909 Act.  But, as Defendant observes, "cases [like] <u>Donald Frederick Evans</u> addressing publication under the 1976 Act employ the same definition of publication as under the 1909 Act."  (Def.'s Reply at 4.)  <u>Donald Frederick Evans</u> is persuasive, and the Court follows it here.

[8/] Given <u>Shoptalk, Ltd.</u>, Defendant contends whether "the Photographs appearing in the press may have been reversed, cropped, retouched, or otherwise altered from the original Photograph, thereby creating a derivative work," is "irrelevant."  (Def.'s Mot. Summ. J. at 15.)
Relying on <u>Batjac Productions, Inc. v. GoodTimes Home Video Corp.</u>, 160 F.3d 1223, 1233 (9th Cir. 1998), Plaintiff argues the Ninth Circuit declined to follow <u>Shoptalk, Ltd.</u> and adopted a contrary rule.  <u>Batjac</u> declined to follow the district court's decision in <u>Shoptalk, Ltd.</u>, not the Second Circuit's decision, which was issued after <u>Batjac</u>.
<u>Batjac</u> did not adopt a contrary rule.  <u>See, e.g.</u>, Melville B. Nimmer & David Nimmer, <u>Nimmer on Copyright</u> § 4.12[B][3], at 4-68 (2004) ("<u>Shoptalk</u> aligned itself with <u>Batjac</u>.").  <u>Shoptalk, Ltd.</u> is persuasive authority, and the Court follows it here.

Milton Greene provided the photographs to a publicist, Warner Brothers, and Fox for dissemination to publicize the motion pictures. (See, e.g., Thomas Decl. Exs. A-G, H at 80, 82, 84-88.) Second, the photographs were published when the publicists and motion picture studios, with Milton Greene's permission, provided the photographs to the press and to theaters in campaign books. (Def.'s Mot. Summ. J. at 16 (citing evidence).) Third, at least six of the seven photographs appeared in the press, either accompanying an article or in an advertisement, and none of the photographs carried a copyright notice. (See, e.g., Def.'s Mot. Summ. J. at 16; Thomas Decl. Exs. B-C, E.)

This would amount to a general publication, forfeiting any copyright Plaintiff had in the photographs. However, if the distributions can be shown to constitute a limited publication, validity may be shown and the photographs will not fall into the public domain.

### b. Limited Publication

A publication is limited only where the work was distributed "(1) to a 'definitely selected group,' and (2) for a limited purpose, [3] without the right of further reproduction, distribution or sale." White v. Kimmell, 193 F.2d 744, 746-47 (9th Cir. 1952); Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc., 944 F.2d 1446, 1452 (9th Cir. 1991). "All three of the enumerated elements [must] exist or else the distribution may not be deemed limited and the copyright will not be valid." Penguin Books U.S.A., Inc. v. New Christian Church, 288 F. Supp. 2d 544, 556 (S.D.N.Y. 2003).

### 1.) Definitely Selected Group

The evidence establishes the photographs were provided to a wide group, not a definitely selected group. (See, e.g., Thomas Decl. Exs. A-C.) In Brown v. Tabb, the Eleventh Circuit held, "Even if the

persons receiving copies in fact constitute only a select group, the publication is nevertheless general if copies were available to persons not included in the group." 714 F.2d 1088, 1092 (11th Cir. 1983). Also, the general public does not constitute a definitely selected group. See Rexnord, Inc. v. Modern Handling Sys., Inc., 379 F. Supp. 1190, 1197 (D. Del. 1974) (stating brochures "were freely available to customers and prospective customers" and, therefore, "the audience to which they were disseminated can hardly be regarded as restricted").

Here, Joshua Greene testified Milton Greene permitted the publicists and the motion picture studios to use the photographs to promote the motion pictures and to place the photographs in newspapers and magazines. (Thomas Decl. Ex. H at 100-02.) Copies of the photographs were available to the general public in newspapers and magazines.

Defendant also offers the declaration of David Weitzner, an entertainment marketing strategist/consultant specializing in the motion picture industry, who testified publicity photographs "were generally available upon request to members of the general public." (Weitzner Decl. ¶ 13.)[9]

---

[9] Plaintiff objects to David Weitzner's testimony, arguing he has not been qualified as an expert and his testimony on the general availability of publicity photographs is improper "custom and practice" testimony.
The Court finds David Weitzner is qualified as an expert. (Weitzner Decl. ¶¶ 2-3 (summarizing his experience in academia and the motion picture industry).) The Court also finds his testimony is not improper custom and practice testimony. First, Plaintiff's personal knowledge objection is overruled. "[E]xperts may base their testimony upon information not within their personal knowledge or observation." United States v. Dailide, 227 F.3d 385, 392 (6th Cir. 2000); Doe v. Cutter Biological, Inc., 971 F.2d 375, 385 n.10 (9th Cir. 1992). Second, Plaintiff's hearsay objection is overruled. Experts may

Defendant has shown the photographs were not distributed to a definitely selected group.

### 2.) For a Limited Purpose

Plaintiff argues the seven photographs were distributed to publicize the motion pictures, which constitutes a limited purpose. Hirshon v. United Artists Corp., 243 F.2d 640, 645 (D.C. Cir. 1957).

Defendant contends Hirshon does not expressly apply the Ninth Circuit's limited publication test and, therefore, does not expressly address whether publicity meets the limited purpose element. The Hirshon court's analysis, however, fits comfortably within the Ninth Circuit's test, and there is no good reason not to apply it here.

Here, there is evidence indicating use of the photographs was restricted. For example, the following is written at the bottom of one of the seven photographs: "Licensed for display only in connection with the exhibition of this picture at your theatre. Must be returned immediately thereafter." (Thomas Decl. Ex. F-2.)

Plaintiff has met the limited purpose element.[10]

---

base their opinions on otherwise inadmissible information. Beighler v. Leoppe, 633 F.2d 531, 533 (9th Cir. 1980). Third, Plaintiff's relevancy objection is overruled. A court may admit expert testimony of business customs and practices where it will aid the trier of fact in understanding the business in which the claims at issue arose. United States v. Leo, 941 F.2d 181, 196 (3d Cir. 1991). Fourth, Plaintiff argues that, to admit this custom and practice testimony, Defendant must show the entire motion picture industry invariably conducted itself in a particular way. In support, Plaintiff cites United States v. Angwin, 271 F.3d 786 (9th Cir. 2001). Angwin is inapposite, as it concerned habit evidence. This objection is overruled.
David Weitzner's testimony is admissible.

[10] Plaintiff appears to argue this finding defeats summary judgment because the restriction indicates Plaintiff did not intend to render the photographs common property. See Am. Tobacco Co. v. Werckmeister, 207 U.S. 284, 299-300 (1907). The

       3.) <u>Without the Right of Further Reproduction,
Distribution, or Sale</u>

The distribution of the work "must preclude recipients from reproducing, distributing, or selling any copies." <u>Penguin Books U.S.A., Inc.</u>, 288 F. Supp. 2d at 557.

Defendant argues the publicists and studios not only had the right to distribute copies of the photographs, but distribution was the very reason Milton Greene provided the photographs to them. (<u>See, e.g.</u>, Thomas Decl. Ex. H at 80, 82, 84-88.) Defendant contends that, because distribution of the photographs was not prohibited -- but actually encouraged -- Plaintiff cannot show limited publication. Defendant also contends Plaintiff, in opposition, "ignores entirely the final, critical prong" of the limited publication test. (Def.'s Reply at 16.)

Defendant has demonstrated Plaintiff cannot meet the third element of the limited publication test. Because all three of the elements must be shown to exist, here "the distribution may not be deemed limited and the copyright will not be valid." <u>Penguin Books U.S.A., Inc.</u>, 288 F. Supp. 2d at 556.

In sum, Plaintiff has not met the validity element of its

---

Court does not agree. Plaintiff must meet all of the limited publication elements. <u>See, e.g.</u>, <u>Nimmer on Copyright</u> § 4.13[A]1, at 4-74 ("If the distribution of copies is not limited to a [definitely] selected group, the publication will be general, not limited, <u>even if restrictions are placed upon the use of the work</u>.") (emphasis added).

  Also, while <u>American Tobacco Co.</u> suggests an author's intent to dedicate his work to the general public is important in analyzing the limited publication elements, <u>Nimmer on Copyright</u> states, "This is clearly contrary to the prevailing rule, which holds . . . the forfeiture resulting from publication occurs as a matter of law regardless of intent." <u>Id.</u> § 4.13[D], at 4-79 (citing <u>White</u>, 193 F.2d at 744, a Ninth Circuit case).

copyright infringement claim.[11] Defendant's motion for summary judgment on copyright infringement is GRANTED.[12]

### III. DISPOSITION

Defendant's motion for summary judgment on waiver is DENIED. Plaintiff's motion for summary judgment on infringement is DENIED. Defendant's motion for summary judgment on infringement is GRANTED. Plaintiff's motion for summary judgment on Defendant's affirmative defenses is MOOT. Defendant is directed to submit a short proposed judgment within ten days.

DATED: June 6, 2005

GARY L. TAYLOR
UNITED STATES DISTRICT JUDGE

---

[11] Because Plaintiff cannot establish validity, the Court does not reach the "copying" element of the copyright infringement test.

[12] Because this holding is dispositive, the Court does not reach the issue of willfulness or Plaintiff's motion for summary judgment on Defendant's affirmative defenses.